UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHANE CRUM,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 16-cv-02795-KJN<br><br><br><br>ORDER |

Plaintiff Michael Shane Crum seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 18.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 22.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.   BACKGROUND

Plaintiff was born on July 26, 1967, and has completed high school but did not graduate or obtain a GED.[2]  (Administrative Transcript ("AT") 36–37, 242, 263.)  On September 25, 2012, plaintiff applied for SSI, alleging that his disability began on February 4, 2012.  (AT 10, 242.)  Plaintiff claimed that he was disabled due to a broken left leg.  (AT 262.)  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on July 9, 2015.  (AT 26–85.)  The ALJ subsequently issued a decision dated July 27, 2015, determining that plaintiff had not been under a disability as defined in the Act, from September 25, 2012, the date the application was filed, through the date of the ALJ's decision.  (AT 10–19.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 19, 2016.  (AT 1–3.)  Plaintiff then filed this action on November 24, 2016, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly discredited the medical opinion of Lynne Fiore, Ph.D.; (2) whether the ALJ erred at step two; and (3) whether the ALJ improperly discounted plaintiff's credibility.[3]

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

    A.    Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At step one, the ALJ concluded that plaintiff has not engaged in

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

3

substantial gainful activity since September 25, 2012, the date of his application. (AT 12.) At step two, the ALJ found that plaintiff had the following severe impairments: gastritis, as well as alcohol and marijuana abuse. (Id.) However, at step three the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AT 14.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that plaintiff could "perform medium work as defined in 20 CFR 416.967(c) except claimant should avoid concentrated exposure to workplace hazards such as heights and dangerous machinery." (AT 14–15.) At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 17.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Id.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, since September 25, 2012. (AT 18.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ improperly discredited the medical opinion of Lynne Fiore, Ph.D.*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, the ALJ considered the March 31, 2015 opinion of treating psychologist Lynne Fiore, Ph.D., who opined "that claimant had limited ability to remember very short and simple instructions or interact appropriately with the public and maintain social behavior . . . would most likely miss four or more days a month due to his condition and would be unable to work on a predictable basis . . . for at least 20 years in the future." (AT 16, 613–18.)

The ALJ gave this opinion little weight, reasoning:

> Dr. Fiore's opinion is inconsistent with other medical opinions of record that showed claimant's mental condition to be non-severe.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

5

> Dr. Patricia Heldman, a medical consultant, reviewed the records on January [18], 2013. She noted that Dr. Porter prescribed Citalopram but five months later the claimant reported he had not used it and his anxiety was under reasonably good control. Dr. Heldman concluded that the claimant's psychological condition was non[-]severe [AT 89]. On September 5, 2013, Dr. Hillary Weiss, a medical consultant, reviewed the record and noted that the claimant was not in psychological treatment, had not been hospitalized for psychological care and was not taking any psychotropic medications. She pointed out that the claimant requested "benzos" which were refused because of his alcohol use and refused any other offered psychotropic medication. Dr. Weiss concluded that the claimant's psychological condition was non[-]severe [AT 99–100]. Dr. Fiore's opinion is not consistent with treatment notes that reflect claimant's mental condition as stable. Dr. Fiore had only treated the claimant six times, since February 24, 2015, at the time of her medical source statement. Michelle Mercurio, Psy.D., and Dr. Fiore both signed this statement, suggesting each contributed to the opinions. Dr. Mercurio's records reflect brief notes of the claimant's subjective complaints. The treatment records of Dr. Mecurio and Dr. Fiore do not support the lengthy list of signs and symptoms in the medical source statement [AT 613–18] nor that the claimant has no useful ability to function. This opinion is partially based on claimant's discredited subjective complaints. Thus, Dr. Fiore's opinion is given little weight.

(AT 16–17.)

Plaintiff asserts that the ALJ erred because she failed to discredit Dr. Fiore's opinion by clear and convincing reasons, which were allegedly required because "none of the nontreating consultative opinions . . . controverted Dr. Fiore's PTSD diagnosis and opinions based on such diagnosis." (ECF No. 18 at 17.) However, the opinions of the state agency medical consultants clearly contradict the opinion of Dr. Fiore because each of the consultants found that plaintiff's psychological condition was non-severe, based upon evidence in the record. (AT 91, 101.) While neither medical consultant specifically opined that plaintiff did not have PTSD, their opinions nonetheless contradict Dr. Fiore's opinion.

Moreover, Dr. Fiore's opinion consists of plaintiff's subjective complaints and Dr. Fiore's conclusions, but is only supported by minimal clinical findings. (AT 613–19.) As such, the ALJ was not required to give this opinion any weight. See Meanel, 172 F.3d at 1114. Nonetheless, the ALJ provided several specific and legitimate reasons, supported by substantial evidence, for giving this opinion little weight.

////

First, the ALJ relied on the inconsistency between the opinions of the state agency medical consultants and the opinion of Dr. Fiore. As explained, this conclusion is supported by the record. Further, the medical consultant's opinions are themselves supported by substantial evidence in the record—namely evidence that plaintiff's mental condition was stable and reasonably well controlled. (See AT 326, 330–31.)

Second, the ALJ determined that Dr. Fiore's opinion is inconsistent with plaintiff's treatment notes. This conclusion is also supported by substantial evidence in the record. For example, on April 27, 2012, plaintiff was treated by Elaine Porter, M.D. for anxiety. (AT 330–31.) Plaintiff sought, and was denied, benzodiazepines. (AT 331.) Instead, Dr. Porter prescribed Citalopram. (Id.) Then, during a September 10, 2012 office visit, plaintiff reported that he was not using the Citalopram and that his "[a]nxiety [was] under reasonable control." (AT 326.) Plaintiff's providers later documented that he continued to exhibit drug-seeking behavior for benzodiazepines and narcotics. (AT 883, 891, 944.) Additionally, as Dr. Weiss pointed out, plaintiff has not been hospitalized for any psychological condition. Indeed, plaintiff went without any psychological treatment for years, and only enrolled in treatment a few months before his disability hearing, nearly three years after his application for SSI. (See AT 1032–39.)

Third, the ALJ pointed out that Dr. Fiore's opinion was based upon only six clinical visits that occurred over a six week period, leading up to the March 31, 2015 opinion. (See AT 613.) The ALJ appropriately relied on the rather brief nature of this relationship, as one reason among many to discount the opinion.

Importantly, it appears that Dr. Mercurio provided the treatment that served as the basis of Dr. Fiore's March 31, 2015 opinion. Dr. Mercurio cosigned this opinion (AT 618) and her treatment notes demonstrate that she saw plaintiff six times between February 24, 2015, and March 31, 2015 (AT 1032–34), which is consistent with the reported basis of the opinion. (AT 613.) At the same time, the record lacks any independent treatment notes from Dr. Fiore, aside from the check-box mental status examination form that was included with his opinion.[6] (AT

---

[6] It appears likely that there were no additional treatment notes from Dr. Fiore. At a minimum, the absence of such treatment notes is not an issue because plaintiff does not assert that the ALJ

7

619.)

Fourth, the ALJ determined that Dr. Mercurio's treatment notes do not support the lengthy list of signs and symptoms in the opinion, or the conclusion that plaintiff has no useful ability to function. This determination is also supported by the record. Not only are Dr. Mercuiro's notes brief, but they lack any significant clinical findings. (See AT 1032–34.) Indeed, they appear to largely recount plaintiff's subjective complaints. (Id.)

Fifth, the ALJ also discredited Dr. Fiore's opinion because it was based upon plaintiff's subjective complaints that the ALJ otherwise discounted. As explained below, the ALJ appropriately discounted plaintiff's credibility in the decision. Thus, this was an appropriate reason, among several, to discredit Dr. Fiore's opinion.

        2.     *Whether the ALJ erred at step two*

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

In this case, the ALJ determined that plaintiff had the severe impairments of gastritis, as well as alcohol and marijuana abuse. (AT 12.) However, the ALJ also determined that plaintiff had impairments that were not severe: left leg/ankle fracture; back pain; and mental condition. (AT 13.) Specifically, the ALJ reasoned:

> The claimant sustained a severe fracture of the left distal tibia and left ankle in February 2012. He underwent successful operative placement of an intra-tibia rod as well as reduction of the ankle fracture. He had a post-operative wound infection, which was treated and resolved. In March 2013, treatment notes document claimant's leg was well healed and that he walked with a normal

---

failed to obtain them or even that any treatment notes are missing from the administrative record.

8

> gait and no limp. He has possibly a small problem with screw head in leg which could eventually require removal of hardware, but claimant is doing well, fully recovered and he did not meet the durational requirement [AT 322, 428].
>
> There is diagnosis of back pain, in 2015 [AT 919, 922, 928, 931]; however per 20 CFR 416.909, this impairment does not satisfy the 12 month duration requirement and is thus nonsevere.
>
> Although the claimant did not allege any mental impairments there are diagnosis of anxiety and mood disorder in the record. However, treatment notes showed claimant's mental condition is controlled with medication and his anxiety is under reasonably good control [AT 326, 446].
>
> The claimant's medically determinable mental impairment of PTSD and anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.

(AT 13.)

The ALJ's conclusions are supported by the record. First, the ALJ appropriately relied on the statements of plaintiff's orthopedist, Michael S. Mikulecky, M.D., when concluding that plaintiff had fully recovered from his left leg/ankle fracture. On March 25, 2013, Dr. Mikulecky physically examined plaintiff and observed:

> His leg looks great. It is well healed. He walks with a normal reciprocal heel-toe gait. There is no limp, but that screw head is a bit proximal. It is a bit prominent and I do see where that would be quite irritating if he does a lot of kneeling with his job.

(AT 428.) Plaintiff asserts that this statement indicates that Dr. Mikulecky opined that plaintiff has a kneeling limitation, which the ALJ inappropriately ignored at step two. (See ECF No. 18 at 9.) However, such an interpretation does not necessarily follow from Dr. Mikulecky's observation. He never stated that plaintiff could not kneel, just that it would be "quite irritating." At best, this record is ambiguous. Thus, the ALJ appropriately resolved the ambiguity here and determined that plaintiff had no severe impairments from his well healed fracture. See Tommasetti, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation").

However, even if the ALJ committed technical error by ignoring this alleged kneeling limitation, any error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)

("we may not reverse an ALJ's decision on account of an error that is harmless"). The ALJ determined that plaintiff was capable of medium work, except that he should avoid concentrated exposure to workplace hazards such as heights and dangerous machinery. (AT 15.) This RFC necessarily includes a finding that plaintiff is capable of most light and sedentary work. Therefore, even if plaintiff's RFC ought to also preclude kneeling, there still remain sufficient jobs that he could have performed in the national economy.

As to plaintiff's back pain, the ALJ accurately determined that the impairment did not satisfy the durational requirement. The records demonstrate that his complaints of back pain began in January of 2015, only seven months before the ALJ's decision. (See AT 19, 919, 922, 928, 931.) Furthermore, there is no indication that this pain was even minimally disabling. Indeed, plaintiff reported that his symptoms are "relieved by exercise." (AT 919.)

Additionally, as explained above, the record supports the ALJ's conclusion that plaintiff's mental condition was reasonably well controlled. Further, there are no significant clinical findings to support that plaintiff's mental condition caused anything more than a minimal effect on his ability to work. Moreover, the ALJ appropriately discredited Dr. Fiore's opinion, which served as the only basis for finding plaintiff had a severe mental impairment.

Therefore, substantial evidence supports the ALJ's determination at step two.

Even assuming, without deciding, that the ALJ technically erred by not finding plaintiff's left leg/ankle fracture, back pain, and mental condition severe for purposes of step two, such error was harmless. See Molina, 674 F.3d at 1111. Because the ALJ found another impairment to be severe at step two, the ALJ proceeded to the subsequent steps of the sequential disability evaluation process. Before proceeding to step four, the ALJ discussed and considered plaintiff's complaints related to his left leg/ankle fracture, back pain, and mental condition when crafting the RFC. (See AT 15–17.) These complaints were discounted because plaintiff's credibility was undermined and because they were not sufficiently supported by clinical findings. (Id.)

Accordingly, the court finds no prejudicial error at step two.

////

////

3. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, the ALJ explained that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [his] statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely credible" based upon several specific, clear, and convincing reasons. (AT 15.)

### i. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

The ALJ observed that plaintiff's

> allegations are inconsistent with clinical indications that show that the claimant's condition is generally well controlled. The claimant's allegations of pain are seriously disproportionate to the normal, and no acute findings, revealed on radiographs of the abdomen and pelvic areas [AT 346, 352, 473, 499–00, 889, 897]. Physical examination have demonstrated only mild epigastric pain, vascular studies were normal, and labs have been unremarkable [AT 445–46].
>
> He testified that even after he stopped dinking there was no change in his abdominal problems. However, treatment notes reflect that his episodes of abdominal pain are usually related to alcohol or when he is out of medication [AT 562, 620].
>
> [. . .]
>
> [Also], these allegations are inconsistent with medical opinions that show that the claimant has considerable work-related abilities. For example, State agency reviewing physicians . . . found claimant's mental condition non-severe [AT 91, 101]. There are also no physical medical opinions in the record, which would support claimant's allegations on an inability to work.

(AT 15–16.)

The ALJ's conclusions are supported by substantial evidence in the record. (See AT 91, 101, 346, 352, 445–46, 473, 499–00, 562, 620, 889, 897.) For example, during a July 24, 2014 visit with Dr. Porter, plaintiff complained of severe abdominal pain. (AT 445.) However, upon physical examination, his abdomen was normal with no hepatic enlargement, but did show some tenderness. (AT 446.) Dr. Porter observed, "Unsure etiology. Vascular studies were normal.

Labs have been recently unremarkable, but this persists in waves for a week or so at a time, primarily in the morning. I suspect a strong stress component. . . . I cannot condone his use of Percocet from a friend. He was made no narcotics due to using someone else's methadone." (AT 446–47.)

Therefore, the ALJ appropriately determined that plaintiff's subjective complaints were not fully corroborated by the objective medical evidence. Importantly, however, the ALJ did not rely on this reason alone to discount plaintiff's credibility.

### ii. Failure to seek seek treatment and failure to follow treatment

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113–14 (citation and quotation marks omitted).

The ALJ pointed out that plaintiff had a history of missing appointments with a gastroenterologist, and that he did not seek any psychological treatment for years after his application for SSI. (See AT 16.) This conclusion is supported by the evidence in the record. On December 22, 2014 Dr. Porter observed that plaintiff "was referred to a gastroenterologist, which he did not keep the appointment." (AT 883.) Also, in July 2014, plaintiff was referred for counseling, which he apparently did not begin until February 2015. (AT 447, 1032–39.)

Moreover, the ALJ observed that plaintiff "appeared to be medication seeking . . . tested positive for opiates, methadone[,] benzodiazepines and marijuana [AT 883, 891]. . ." and even though plaintiff "has a history of alcohol and drug abuse, he does not feel that he abuses it, but has been advised that his gastritis might be self-induced as it recurs every time he drinks [AT 563]. This observation too is supported by evidence in the record. (See AT 563, 883, 891.) For example, as mentioned above, plaintiff is documented as having used methadone and Percocet that were not prescribed to him. (AT 447.)

13

Additionally, in July 2013, plaintiff was admitted to the hospital for his abdominal pain and he told the provider to "load me up with dilaudid [a narcotic pain medication]." (AT 563) The treating physician advised plaintiff "that 'loading him up' with pain medication is not an appropriate resolution to his alcohol induced gastritis." (Id.) Then, in December 2014, another treating physician observed that plaintiff "seems to be a pain medication seeker and he is asking for more and more pain medication in the ER." (AT 891.)

Therefore, the ALJ appropriately relied on this evidence to undermine the credibility of plaintiff's subjective complaints, as it tends to demonstrate that plaintiff was more interested in obtaining narcotic medication, as opposed to seeking consistent treatment and keeping appointments.

### iii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ accurately and appropriately pointed out that the "[d]ocumented treatment [here] has been conservatively limited to pain medication and routine care." (AT 16.)

### iv. Condition can be controlled with medication

Finally, a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). The ALJ observed that "treatment notes in June 2015, document claimant's abdominal pain improved with medication." (AT 16.) This conclusion too is supported by the record. (See AT 944 (plaintiff reported that a prescription of Carafate "helped his stomach pain quite a bit" after an ER visit).

////

14

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: March 20, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

14/ss.16-2795.crum.order.msj